**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**JOSHUA DAVID HOLLON**                                    **PLAINTIFF**

**v.**                                    **CIVIL ACTION NO. 1:24-cv-148-TBM-BWR**

**BURL CAIN**                                    **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

*Pro se* Plaintiff Joshua Hollon admitted in state court to "having sex" with a minor before pleading guilty to two counts of sexual battery. When Hollon later attempted to collaterally attack his conviction, this Court held that his habeas claims were procedurally barred. Hollon now seeks to reopen his case by presenting what he claims is new evidence of his innocence: an alleged handwritten letter and a Facebook direct message in which the alleged victim purportedly recants her allegations. But the evidence fails under the applicable legal standards.

The letter and message are insufficient to meet the actual innocence exception excusing otherwise procedurally barred habeas claims. For starters, the letter's signature misspells the victim's first name. It is otherwise unsworn and unverified. And the Facebook message came from a newly created account. The writings also contradict both the victim's initial statements to investigators and substantial corroborating physical evidence taken from Hollon's home. That evidence includes a condom with matching DNA and a computer with "daddy/daughter incest" porn used to groom the victim. Hollon's evidence fails to establish his actual innocence for purposes of his motion. Hollon's Rule 60(b) motion is denied, and his habeas claims remain procedurally barred.

## I.   RELEVANT BACKGROUND AND PROCEDURAL HISTORY

In 2021, Harrison and Hancock County grand juries indicted 36-year-old Hollon for 14 sex offenses against T.E.S., his minor stepdaughter. [8-5], pps. 9–14; [8-7], pps. 11–13. Later that year, he pled guilty to two counts of sexual battery, one in each jurisdiction. [18], p. 2. At his plea hearing, the government described the underlying investigation and its results. T.E.S.'s family first learned of the sexual abuse when she was 14 after reading her journal. [8-8], p. 19. In the journal, T.E.S. noted the "things that were happening to her," her concerns about sexually transmitted diseases, and "discomfort in her female areas." *Id.* This information was reported to the Hancock County Sheriff's Department. *Id.* at p. 16.

The Hope Haven Child Advocacy Center conducted a forensic interview with T.E.S. *Id.* at p. 17. There, she described various sexual acts, including oral, vaginal, anal, and digital penetration, between her and Hollon over "a period of about six years." *Id.* A joint investigation by the Gulfport Police Department and Hancock County Sheriff's Department "substantiate[d]" the "significant" amount of information provided by T.E.S. *Id.* For example, investigators found a used condom "precisely where [T.E.S.] said it was." *Id.* at p. 19. A forensic test revealed DNA matching Hollon's on the inside of the condom and T.E.S.'s on the outside of the condom. *Id.* T.E.S. also described a computer that Hollon used to groom her. *Id.* at p. 18. Investigators recovered it and discovered "daddy/daughter incest" search queries on porn websites. *Id.* Investigators used school and hotel records to corroborate the "times and places" of the alleged abuse too. *Id.* at p. 20.

In January 2022, Hollon was sentenced to forty years in prison, with ten years suspended. [18], p. 2. Explaining her upward departure from the state's recommendation, the state sentencing

judge noted that Hollon's case contained "some of the most disturbing facts" that she had read since taking the bench. [8-8], p. 34. Hollon filed two post-conviction relief ("PCR") motions in state court. [18], p. 3. The state court consolidated the PCR motions and denied them. *Id.* Hollon appealed, and the Mississippi Court of Appeals affirmed the trial court's decision on May 7, 2024. *Id.* at p. 4. Hollon did not file a motion for rehearing with the Court of Appeals or a writ of certiorari with the Mississippi Supreme Court.

Instead, Hollon filed a Section 2254 petition, titled "Motion for Appeal," in this Court on May 16, 2024. [1] Hollon asserted five grounds for habeas relief. *Id.* at p. 2. Magistrate Judge Rath, in his Report and Recommendation, found that Hollon failed to exhaust all state court remedies as to each ground by not filing a motion for rehearing or a writ of certiorari after the Mississippi Court of Appeals' denial. [18], pps. 8–9. Judge Rath further noted that the deadlines for seeking such state court relief had elapsed, leaving Hollon's habeas claims procedurally barred from federal review. *Id.* at pps. 10–11. And no exception to this procedural bar applied. *See id.* at pps. 9–12. Relevant here, Hollon did not show that the Court's inability to consider his claims would amount to a "fundamental miscarriage of justice because he [was] actually innocent." *Id.* at p. 9. As Judge Rath reasoned, Hollon presented no substantive arguments supporting his innocence or new, reliable evidence to overcome his guilty plea and admission in state court that he "did have sex" with T.E.S. *Id.* at p. 10 (quoting [8-8], pps. 15–16). Accordingly, Judge Rath recommended Hollon's claims be dismissed with prejudice as procedurally defaulted. *Id.* at p. 11.

Hollon objected to Judge Rath's recommendation. Most of his objections, however, reiterated concerns already raised in his initial habeas petition. *See* [21], p. 3. Because Judge Rath had properly considered and disregarded these allegations, the undersigned declined to make new

findings. *Id.* Hollon's objections did engage with Judge Rath's analysis, albeit in a conclusory fashion, on at least one issue. As the undersigned noted, Hollon argued his innocence for the first time in his objection. [21], p. 3. But Hollon did not support this statement with any legal authority or evidence. *See id.* at p. 4. The undersigned found that "Hollon's conclusory allegation of his innocence . . . in the Objection d[id] not change Judge Rath's procedural default finding." *Id.* Judge Rath's Report and Recommendation was adopted in June 2025. *Id.* at p. 5.

On January 29, 2026, Hollon filed a new motion, titled "motion to enter evidence on post conviction." [25]. Hollon attached a picture of a handwritten letter and a Facebook direct message to the motion. [25-2]; [25-3]. T.E.S. allegedly sent both items to Hollon's mother on January 14, 2026. [25-2], p. 2; *see* [26-1], p. 4. In the letter, T.E.S. allegedly admits to starting a rumor, at the direction of her mother, that Hollon was molesting her. [25-2], p. 6. The letter also suggests how Hollon's and T.E.S.'s DNA ended up on the same condom. *See id.* at p. 7. T.E.S., the letter claims, tried to recant before the trial. *Id.* at p. 8. But the prosecutor allegedly disregarded her story. *Id.* T.E.S. concludes by noting that she "can not do this anymore" and is "trying to make what's wrong right again" before signing her name. *Id.* In the Facebook message, T.E.S. stated that she mailed the letter to the courthouse and claimed Hollon was "innocent" and is "not l[y]ing to anyone about that." *Id.* at p. 12. That said, T.E.S.'s message also notes that she "will not show up to court and will not admit to sending [the letter] if [her] family finds out." *Id.* at p. 11.

## II. DISCUSSION

Hollon argues this new evidence demonstrates how he "was wrongfully convicted and how the state also was corrupt and involved." [25], p. 2. The Court must first determine whether it has jurisdiction, though. Only if it does can the Court rule on the adequacy of the evidence.

4

**A. Jurisdiction**

The Court's jurisdiction turns on the motion's identity. Hollon does not cite a specific statute or rule authorizing this Court's review. Courts often construe post-judgment motions that bring forward new evidence in habeas proceedings as successive habeas petitions or Rule 60(b) motions. *See In re Segundo*, 757 F. App'x 333, 335 (5th Cir. 2018) (per curiam). The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") "requires a prisoner to obtain authorization from the federal appellate court in his circuit before he may file a 'second or successive' petition in federal district court." *Leal Garcia v. Quarterman*, 573 F.3d 214, 219 (5th Cir. 2009) (quoting 28 U.S.C. § 2244(b)(3)). "Without such authorization, the otherwise-cognizant district court has no jurisdiction to entertain a successive § 2254 petition." *Id.* AEDPA's authorization requirement, however, does not apply to a *proper* Rule 60(b) motion, *i.e.,* not a habeas petition disguised as a Rule 60(b) motion. *Gonzalez v. Crosby*, 545 U.S. 524, 534, 125 S. Ct. 2641, 162 L. Ed. 2d 480 (2005).

The motion's substance dictates its identity. When examining the motion's substance, the court "should determine whether it either: (1) presents a new habeas *claim* (an 'asserted federal basis for relief from a state court's judgment of conviction'), or (2) 'attacks the federal court's previous resolution of a claim *on the merits*.'" *In re Edwards*, 865 F.3d 197, 203 (5th Cir. 2017) (quoting *Gonzalez*, 545 U.S. at 530). If the "motion does either, then it should be treated as a second-or-successive habeas petition and subjected to AEDPA's limitation on such petitions." *Id.* The motion falls under Rule 60(b), by contrast, when it "'attacks some defect in the integrity of the federal habeas proceedings,' rather than the resolution on the merits." *Id.* at 204 (quoting *Gonzalez*, 545 U.S. at 532). Accordingly, a movant is not making a habeas corpus claim by arguing "that a previous ruling which precluded a merits determination was in error—for example, a denial

5

for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." *Id.* (quoting *Gonzalez*, 545 U.S. at 532 n.4). In sum, "to bring a proper Rule 60(b) claim, a movant must show 'a non-merits-based defect in the district court's earlier decision on the federal habeas petition.'" *Id.* (quoting *Balentine v. Thaler,* 626 F.3d 842, 847 (5th Cir. 2010)).

Neither feature of a second-or-successive habeas petition is present here. First, Hollon's motion does not present a habeas claim because the "claim of actual innocence is not itself a constitutional claim." *McGowen v. Thaler*, 675 F.3d 482, 499 (5th Cir. 2012) (quoting *Herrera v. Collins,* 506 U.S. 390, 404, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993)); *accord Floyd v. Vannoy*, 894 F.3d 143, 155 (5th Cir. 2018) ("Our court does not consider *habeas* relief based on 'free standing claims of actual innocence.'"); *Rocha v. Thaler*, 626 F.3d 815, 824 (5th Cir. 2010). Instead, a successful actual-innocence argument provides "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *McGowen*, 675 F.3d at 499 (quoting *Herrera*, 506 U.S. at 404). Second and relatedly, since Hollon failed to establish his actual innocence, he could not pass through the metaphorical gateway to save his procedurally barred claims. This meant the Court could not, "and did not, consider the merits of his habeas claim[s]" because "a petitioner's gateway claim of innocence precedes consideration of his federal constitutional claim not just temporally but analytically." *Rocha*, 626 F.3d at 824 (joining the "eleven federal courts of appeals," which "unanimously held that a federal court's determination that a petitioner cannot prove his actual innocence does not constitute a decision on the merits of the petitioner's constitutional claim for habeas relief").

For these reasons, Hollon's postjudgment motion effectively argues that the Court erred in applying the procedural bar to his habeas claims in light of the newly discovered handwritten

6

letter and Facebook message. Hollon's motion is best construed under Rule 60(b). *See Rodriguez v. Dir., TDCJ-CID*, No. 3:20-cv-359-S-BN, 2022 WL 2229930, at *2 (N.D. Tex. Apr. 6, 2022) (treating postjudgment motion that presented new evidence of actual innocence as an attack on court's prior procedural default determination), *report and recommendation adopted,* No. 3:20-cv-359-S-BN, 2022 WL 2209959 (N.D. Tex. June 21, 2022).[1] Satisfied with its jurisdiction, the Court will now consider the merits of Hollon's Rule 60(b) motion. *See Ruiz v. Quarterman*, 504 F.3d 523, 526 (5th Cir. 2007).

**B. Rule 60(b)**

"Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence." *Gonzalez*, 545 U.S. at 529. Under Rule 60(b)(2), the most applicable provision, "a movant must demonstrate (1) that it exercised due diligence in obtaining the information; and (2) that the evidence is material and controlling and clearly would have produced a different result if present before the original judgment." *Nat'l City Golf Fin., a Div. of Nat'l City Com. Cap. Co., L.L.C. v. Scott*, 899 F.3d 412, 418 (5th Cir. 2018) (quoting *Thermacor Process, L.P. v. BASF Corp.*, 567 F.3d 736, 744 (5th Cir. 2009)). "The decision whether to grant relief lies within the sound discretion of the court." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 157 (5th Cir. 2004). The Court declines to exercise its discretion because the second prong is dispositive. Had Hollon

---

[1] Hollon filed a similar motion in the Mississippi Supreme Court with the same handwritten letter and Facebook message attached. [26-2]. Unlike his federal motion, Hollon's state motion does clarify that he is seeking relief to "file a successive post[-]conviction" motion. *Id.* at p. 6. Despite his characterization in the state filing, the Fifth Circuit has instructed that "when a Rule 60(b) motion attacks 'some defect in the integrity of the federal habeas proceedings,' it is not successive and *should not* be construed as such." Unpublished Order at 2, *In re Stanley Lee Bradley*, No. 24-60005 (5th Cir. Mar. 6, 2024) (emphasis added) (quoting *Gonzalez*, 545 U.S. at 532).

presented the handwritten letter and Facebook message before judgment was entered, the Court would still have found that the actual innocence exception did not save his claims.

The actual innocence standard bears discussing to demonstrate why. "[T]here is no presumption of innocence at a habeas proceeding." *Bosley v. Cain*, 409 F.3d 657, 664 (5th Cir. 2005). To the contrary, Hollon "comes before the habeas court with a strong—and in the vast majority of the cases conclusive—presumption of guilt." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 326 (1995)). To prove actual innocence, Hollon "must produce 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence'—sufficient to persuade the Court that 'no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Hicks v. Davis*, No. 2:14-cv-13-KS-MTP, 2012 WL 12045686, at *3 (S.D. Miss. Feb. 5, 2012) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 386, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013)). Hollon's evidence fails on all fronts.

The evidence does not appear reliable. The Fifth Circuit "views recanting affidavits with extreme suspicion." *Komolafe v. Quarterman*, 246 F. App'x 270, 272 (5th Cir. 2007) (citing *Spence v. Johnson,* 80 F.3d 989, 1003 (5th Cir. 1996)). The handwritten letter and Facebook message have several peculiarities that cast doubt on their authenticity. The only identifying mark on the handwritten letter is T.E.S.'s signature. [25-2], p. 8. But the first name is misspelled. The letter is otherwise unsworn and unverified. *See Yrdanoff v. United States*, No. 4:17-CR-193-A, 2020 WL 3453128, at *3 (N.D. Tex. June 24, 2020) (finding recantation letter unreliable, in part, because it was unsworn); *Shepherd v. Dir., TDCJ-CID*, No. 6:23-cv-5, 2023 WL 7443042, at *4 (E.D. Tex. Sept. 12, 2023) (noting "purported recantation letter" was "unsworn and thus not competent evidence"), *report and recommendation adopted,* No. 6:23-cv-00005, 2023 WL 7414257 (E.D. Tex.

Nov. 9, 2023). The Facebook message is likewise suspect. It came from a "New Facebook Account," and T.E.S. stated that she would "deny" sending the letter and would "not show up to court." [25-2], pps. 10–11. Although not conclusive, these red flags heighten the Court's suspicion.

The suspect evidence does not persuade the Court that no reasonable juror would have found Hollon not guilty. For starters, Hollon's case did not even reach a jury; he pled guilty despite his now-claimed innocence. Some courts hold that a guilty plea forecloses any relief under the actual innocence exception. *See Pipkin v. Cain*, No. 3:23-cv-434-MPM-JMV, 2024 WL 2736162, at *8 (N.D. Miss. May 28, 2024) (collecting cases). "The courts which have found that actual innocence excuses untimeliness (or some other procedural bar) have noted the daunting challenge the petitioner faces when he has pled guilty to the charge." *Id.* (collecting cases). "A petitioner claiming innocence after first pleading guilty faces the maxim[:] 'Solemn declarations in open court carry a strong presumption of verity.'" *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977)).

The handwritten letter and Facebook message have little, if any, evidentiary weight relative to Hollon's guilty plea and the corroborating evidence underlying his charges. At the beginning of his plea hearing, Hollon unequivocally stated, "I did have sex with T.E.S.," on two different occasions. [8-8], pps. 15–16. The prosecutor then put additional facts into the record. These facts included the details provided by T.E.S. during her interview with the Hope Haven Child Advocacy Center. *Id.* at p. 17. The prosecutor noted that the criminal investigation corroborated T.E.S.'s statements. For example, investigators found a condom with their DNA on it, a computer with "daddy/daughter incest" search inquiries on a porn website, and evidence identifying "the times

and places" where the acts occurred. *Id.* at pps. 17–20. After the prosecutor finished, the Court asked Hollon how he pled to both charges of sexual battery. Hollon responded, "Guilty." *Id.* at p. 21. During allocution, Hollon apologized to T.E.S. and her family. *Id.* Hollon offers no explanation for making these statements despite his alleged innocence. As a sister-court aptly stated in a similar case: "Considering [Hollon's] guilty plea, his lack of explanation—and the third-party evidence—his actions and words simply do not align with those of an innocent man wrongfully convicted of a crime." *Pipkin*, 2024 WL 2736162, at *10.

For these reasons, Hollon is not entitled to the actual innocence exception. The Court would have reached the same conclusion had Hollon presented the handwritten letter and Facebook message in support of his objections before judgment was entered. Hollon is therefore not entitled to Rule 60(b)(2) relief. His claims remain procedurally barred.[2]

### III. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Plaintiff Joshua Hollon's [25] Motion to Enter Evidence on Post Conviction is DENIED.

This, the 4th day of August, 2026.

TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE

---

[2] The Court's decision does not foreclose all potential relief should T.E.S. come forward with a verified affidavit corroborating the contents of the letter. Hollon may still seek authorization from the appropriate court of appeals to file a successive habeas application. 28 U.S.C. § 2244(b)(3)(A). Stronger evidence and additional facts pertaining to his prosecution would aid in such a venture. *Cf. In re Will*, 970 F.3d 536 (5th Cir. 2020).